# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MELECIO LLAMAS-SANCHEZ, | ) | 1:06cv0683 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Melecio Llamas-Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits on October 22, 2003, alleging disability since August 12, 2002, due to injured discs and pain in his back and sciatic

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 2, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

nerve pain.  AR 55-57, 62-71.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 36-39, 42-46, 48.  On August 24, 2005, ALJ Patricia Flierl held a hearing.  AR 211-232.  ALJ Flierl denied Plaintiff's claim on November 22, 2005.  AR 10-17.  On April 7, 2006, the Appeals Council denied review.  AR 4-7.

<u>Hearing Testimony</u>

ALJ Flierl held a hearing on August 24, 2005, in Fresno, California.  Plaintiff appeared with his attorney, Robert Christenson.  A Spanish interpreter assisted with testimony.  AR 211.

Plaintiff testified that he was 44 years old at the time of the hearing and completed the third grade in Mexico.  He cannot read, write, understand or speak English.  In the last 15 years, he has worked as a mechanic, irrigator, butcher, pruner, sorter, tractor driver and painter.  AR 214-216.  He last worked as a painter about two years ago.  AR 217.

The ALJ first questioned Plaintiff about a discrepancy in the date he last worked.  In his application, he stated that he was unable to work as of August 12, 2002, but in a medical report dated September 11, 2002, he indicated that he had been working in construction recently and injured his hand the week prior.  AR 217.  Plaintiff explained that he had to help build his house in order to get the loan, and that he tried to help when he could.  His family also helped.  AR 218.  Plaintiff helped out two days a week, about five hours a day.  AR 222.  His family completed the remainder of the required forty hours per week.  AR 219.

Plaintiff testified that he has pain in his back, under the belt line, all the time because of two "open discs."  He described the pain as sharp and radiating to his right leg.  He does not have any strength in that leg.  AR 223.  He needs help putting on his shoes and socks because he cannot bend down to the floor.  For about one month every two to three months, he needs help putting on his clothes.  AR 224-225.  He cannot lift any weight from the floor, but thought he could lift about 20-30 pounds from a table for 10-15 minutes a day.  He can stand longer than he can sit, and thought he could stand in one position for about 10-15 minutes.  AR 225.  He could sit for about five minutes without moving, and for 30 minutes or more if he can move around.  AR 226.  He could walk half to three-quarters of a block before needing to stop.  AR 226.

Plaintiff estimated that he needed to take a 45-minute break every hour. He has a driver's license and can drive short distances- five or six miles. AR 227. During the day, he sometimes helps his wife with the dishes and vacuuming, watches some television, visits with friends and goes shopping with his wife. AR 228. His medication takes the pain away "a little." AR 229.

Plaintiff explained that he decided not to have surgery because a doctor told him that it could worsen his pain. AR 230. Plaintiff takes ibuprofen for pain, aspirin and something to help him sleep. AR 231-232.

Medical Record

On August 22, 2002, Plaintiff saw Morakod Lim, M.D. Plaintiff reported that he had been unable to work for the past eight months because of low back pain and requested Dr. Lim fill out disability paperwork. His back pain began in 1986 after a motorcycle accident. AR 134. Plaintiff told Dr. Lim that he could not work but that he was not receiving treatment for his back pain. Upon examination, there was subjective tenderness over the left S1 joint, but no spine deformity. Plaintiff was able to climb onto the examination table quickly without any problem, and he had no other tenderness in the back area. Dr. Lim noted that the examination was objectively difficult to perform because of poor effort by Plaintiff. Straight leg raises were negative bilaterally and neurological examination was normal. Dr. Lim diagnosed chronic low back pain with questionable disc disease, with no radiculopathy, but with subjective amplification of his symptoms (i.e., his ability in walking and climbing onto the table seemed unmatched with intended physical exam). He gave Plaintiff Motrin, requested an MRI and referred Plaintiff to physical therapy. Dr. Lim believed Plaintiff could work an eight hour shift, five days per week, with occasional bending and twisting and lifting up to 25 pounds. AR 134.

Plaintiff underwent an MRI of his lower spine on September 9, 2002. The test revealed degenerative disc disease at L4-5 and L5-S1, and a mild central lumbar disc bulge at L4-5 but without significant stenosis. AR 131-132.

On September 11, 2002, Plaintiff saw Dr. Lim and requested disability from work because of his low back pain. Plaintiff reported that he had been working in construction recently and injured his finger the week before. AR 128. On examination, there was no muscle

spasm or deformity in his lower back and he had full range of motion.  Forward flexion was 90 degrees and straight leg raising was negative.  Plaintiff was spontaneous in his activity and was agile without any problems when not being examined.  He ambulated without limping.  AR 128.  Dr. Lim instructed Plaintiff to continue Motrin and prescribed Keflex.  He indicated that Plaintiff could work eight hours per 24 hours.  Plaintiff could lift up to 25 pounds and could perform occasional bending and twisting through October 11, 2002.  AR 128.

On October 7, 2002, Plaintiff told Christopher Kolker, M.D., that he could not lift anything and that he has pain that radiates down to his right foot.  Dr. Kolker indicated that an MRI showed L5/S1 disc space narrowing consistent with degenerative disc disease, which pushes out to the spinal cord and is causing spinal stenosis.  AR 125.

In December 2002, straight leg testing was positive.  Dr. Kolker diagnosed degenerative disc disease in his lower back, and possibly his neck, without radiation into his arms.  He referred Plaintiff to a neurosurgeon.  AR 122.

On March 31, 2003, Plaintiff saw C.B. Leramo, M.D., for a neurosurgical consultation.  He complained of a history of low back pain for 18 years with pain radiating down his right leg.  He also reported numbness, tingling and weakness in his right leg, and indicated that the leg pain was worse than his back pain. On examination, Plaintiff was in mild distress from low back pain.  His gait was normal, but straight leg raising and range of motion were limited.  Sensory examination revealed a right L5-S1 hyperesthesia.  Motor function was normal and reflexes were symmetrical.  Dr. Leramo reviewed Plaintiff's September 2002 MRI, and diagnosed chronic post-traumatic low back pain, degenerative disc disease and facet arthropathy with foraminal stenosis, L4-L5, and right L5-S1 radiculopathies.  Dr. Leramo began conservative treatment with a trial of steroids, Vicodin, and an increase in his Motrin.  He was referred to physical therapy for moist heat, ultrasound, soft tissue massage, and hydrotherapy, twice a week for six weeks.  Plaintiff was advised to avoid heavy lifting, pushing, pulling, twisting and bending, and to use proper body mechanics in all activities.  AR 151-152.

X-rays of Plaintiff's lower back on April 14, 2003, revealed significant disc space narrowing L4-5 and L5-S1.  AR 161.

Plaintiff underwent nerve conduction studies in July 2003. The tests did not reveal any evidence of peripheral neuropathy in his lower extremities, although there could have been a complication of nerve root entrapment or mononeuritis. AR 148-149.

On December 2, 2003, Plaintiff complained of low back pain with right leg sciatic pain. He was taking Vicodin and Motrin and was referred for another MRI. AR 140.

Plaintiff underwent an MRI of his lumbar spine on December 20, 2003. The test revealed mild to moderate L4-5 lumbar disc bulge, with mild left-sided L4 ganglionic compression. AR 159-160.

On January 15, 2004, Plaintiff saw Michael Wlasuchuk, M.D., for a consultive evaluation. Plaintiff reported constant pain in his lower back with radiation down to his right ankle and weakness. He could sit for 45 minutes, stand for up to one hour, with shifting, and walks two miles per day. He could lift a maximum of 30 pounds rarely, at waist level, and could dress himself. Plaintiff reported that he last worked in March 2002 as a painter, when he was terminated because he could not lift the pallets. On examination, Plaintiff walked with a slight favoring of his right lower extremity and was able to walk on his heels and toes. Palpation of his lumbar spine revealed discomfort at L4-5, L5-S1, including the upper buttock area. He could get on and off the examining table without difficulty. Straight leg raising was limited with complaints of hamstring discomfort. Motor, reflex and sensory testing were normal. AR 162-164.

Dr. Wlasichuk diagnosed chronic lumbar pain syndrome with multiple levels of small disc bulges. He opined that Plaintiff could occasionally lift up to 25 pounds, 15 pounds frequently, stand and/or walk up to six hours per day and sit continuously, with breaks, for about four hours per day. He did not require an assistive device, but could not perform repeated climbing, bending, or forceful pushing or pulling. AR 162-164.

On March 12, 2004, State Agency physician Durell D. Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could occasionally lift/carry 25 pounds, 15 pounds frequently, could stand about six hours in an eight-hour day and could sit for about six hours in an eight-hour day. Plaintiff was limited in pushing

1  and pulling with his right lower extremity. He could frequently climb, balance, kneel, and crawl,
2  and could occasionally stoop and crouch. AR 165-172. This opinion was affirmed on June 10,
3  2004. AR 165.
4      In October 2004, Plaintiff began seeing Alvaro Cacares, M.D. with complaints of back
5  pain and headaches. AR 203. In December 2004 and February 2005, Dr. Cacares reported
6  normal physical findings. AR 195, 200. During this time, he was prescribed naprosyn for pain.
7  AR 194.
8      Dr. Cacares completed a Residual Functional Capacity Questionnaire on July 22, 2005.
9  He indicated that Plaintiff had disc disease and back pain and that his symptoms included pain,
10 tenderness, dizziness and weakness. His response to medication has been poor. Dr. Cacares
11 opined that Plaintiff's pain, fatigue and other symptoms would constantly interfere with his
12 attention and concentration, and thought he could maintain attention and concentration for 10
13 minutes at a time. Plaintiff was incapable of even a low stress job. He could walk 1/4 block
14 before needing to stop, sit for five minutes at one time, and stand for 15 minutes at one time.
15 Plaintiff could sit for less than two hours total and stand/walk for less than two hours total. He
16 would need to walk for 15 minutes every 30-45 minutes and needed a job that would allow him
17 to shift positions at will. He would need unscheduled breaks every 30 minutes and had to elevate
18 his legs for 60 percent of the day (if in a sedentary job). He could rarely lift 10 pounds, and
19 never anything heavier. He could rarely twist, stoop, or climb ladders/stairs. He could never
20 crouch. Plaintiff would likely be absent more than four days per month because of his
21 impairments. AR 185-189.
22     ALJ's Findings
23     The ALJ determined that Plaintiff suffered from the severe impairment of lumbar disc
24 disease. Despite this, he retained the residual functional capacity ("RFC") to lift and carry 20
25 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in a workday, sit
26 six hours, occasionally push/pull with the lower extremities, and occasionally climb, balance,
27 kneel, crawl and stoop. AR 13. In making this determination, the ALJ found Plaintiff's
28 testimony not wholly credible. Based on this RFC, the ALJ determined that Plaintiff could return

to his past relevant work as a fruit sorter, a sedentary position. In the alternative, the ALJ applied Rule 202.16 of the Medical-Vocational Guidelines ("Grids") to determine that Plaintiff was not disabled. AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(e), 416.920 (a)-(g) (2005). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (lumbar disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P of Part 404; (4) can perform his past relevant work as a fruit sorter; or, alternatively, (5) is not disabled based on the application of Rule 202.16. AR 16-17.

Plaintiff argues that the ALJ erred in failing to (1) adopt Dr. Cacares' opinion; (2) use a vocational expert; (3) explain why she did not accept Dr. Wlasichuk's sitting limitation; and (4) find Plaintiff credible.

**DISCUSSION**

A.   <u>Treating Physician Opinion</u>

Plaintiff first argues that the ALJ erred in failing to adopt the July 22, 2005, opinion of his treating physician, Dr. Cacares, set forth in a Residual Functional Capacity Questionnaire form.

Plaintiff correctly asserts that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set

8

out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e). "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

In her opinion, the ALJ set forth numerous reasons for rejecting Dr. Cacares' opinion that Plaintiff was severely limited. She first explained that Dr. Cacares' own treatment notes did not support his opinion. AR 15. For example, he did not impose any restrictions on Plaintiff during his visits, and in December 2004 and February 2005, Dr. Cacares reported normal physical findings. AR 195, 200. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallanes,* 881 F.2d at 751. Plaintiff points out that the progress notes consistently report complaints of headaches and back pain, but these are his subjective complaints rather than Dr. Cacares' objective findings.

The ALJ also explained that Plaintiff received conservative treatment for his back pain and that this was inconsistent with a severe pain syndrome. AR 15. The need for conservative treatment suggests a lower level of pain and functional limitation. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). While it is true that Plaintiff was prescribed Vicodin, ibuprofen, Dalmane and aspirin, as he states, these medications do not negate the ALJ's observance that Plaintiff was treated with conservative measures.

Next, ALJ Flierl explained that the only objective finding set forth on the July 2005 assessment was "tenderness" of the neck and lumbar spine, along with "weakness" of the right leg. AR 15, 186. Dr. Cacares did not set forth any laboratory findings or test results despite the request for such supporting information. AR 186. Plaintiff contends that his MRIs and x-rays support Dr. Cacares' restrictions. His restrictions are, however, very limiting, and are not necessarily supported by the test results. Dr. Cacares could have, but failed to list these results in support of his opinions, and without such support, the ALJ did not err in rejecting his assessment.

Finally, the ALJ rejected Dr. Cacares' opinion because there was no indication that he used the legal standards and considerations as prescribed by the Social Security Act in his

assessment of Plaintiff's condition. AR 15. The ALJ also correctly noted that "merely making statements or checking boxes alone without supporting documentation does not present a persuasive argument and accordingly is not binding upon the undersigned or the Social Security Administration. . . " AR 15-16. A brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Although Plaintiff may not agree with the ALJ's treatment of Dr. Cacares' opinion, the ALJ's analysis was supported by substantial evidence and was free of legal error.

B.  Use of a Vocational Expert

Plaintiff next faults the ALJ for failing to use a vocational expert. His argument is two-fold- he contends that a vocational expert ("VE") should have been used to support the step four conclusion that Plaintiff's past work as a fruit sorter was a sedentary position, and that VE testimony was required at step five to assess the impact of Plaintiff's non-exertional limitations.

At step four, the ALJ classified Plaintiff's past relevant work as a fruit sorter as a sedentary position. AR 16. Since Plaintiff's RFC allowed him to perform light work with postural limitations, the ALJ concluded that Plaintiff could return to this position. AR 16. Plaintiff cites the definition of fruit sorter in the Dictionary of Occupational Titles ("DOT"), where it is listed as a light position, in support of his argument that VE testimony was necessary to determine the exertional level of his past position.

The step four determination involves a comparison between the demands of the claimant's former work and his present capacity. *Villa v. Heckler*, 797 F.2d 794, 799 (9th Cir. 1986). It is Plaintiff's burden to demonstrate that he is unable to return to his previous job, and if he is unable to do so, the burden remains with him rather than shifting to Secretary to proceed to step five. *Matthews v. Shalala*, 10 F.3d 678 681 (9th Cir. 1993). Although there are circumstances where VE testimony is necessary at step five, it is not required at step four. *Id.* (explaining that when the burden remains with the claimant at step four, VE testimony is useful but not required).

In the instant case, based on Plaintiff's own description of his work as a fruit sorter, the ALJ determined that Plaintiff could return to this work. As this was a step four determination, VE testimony was not required. Indeed, Plaintiff's description of his fruit sorter position was quite clear. In his work history report, he indicated that he did not use machines, tools, or equipment, and that the position did not require any climbing, stooping, kneeling, crouching, crawling, handling or writing. He also indicated that the position did not require any lifting. AR 80. Similarly, he testified that sorting cherries did not require any lifting because "you have to sit down in a conveyer belt in the line, and you have to only pick out the cherries that show the bone." AR 215. Substantial evidence therefore supports the ALJ's determination that Plaintiff could return to this position based on his RFC. Plaintiff's citation to the DOT does not change this result, especially where Plaintiff does not present any description that conflicts with his testimony.

Plaintiff next argues that the ALJ erred at the alternate step five finding by failing to call a VE to address the impact of Plaintiff's non-exertional limitations. The Court has determined that the step four determination was supported by substantial evidence, making the ALJ's step five determination irrelevant. Nevertheless, a review of the step five decision reveals no errors.

In general, where a clamant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

In the alternate step five finding, the ALJ applied Rule 202.16 and found that Plaintiff could perform other work in the national economy. Without much explanation, Plaintiff argues that his limitation to occasional pushing/pulling with the lower extremities and occasional climbing, balancing, kneeling, crouching, crawling and stooping, precluded the application of the Grids because they "affect the occupational base" and therefore required the testimony of a VE.

The regulations define light work as involving lifting no more than twenty pounds at a time, with frequent lifting/carrying of up to ten pounds. Light work may also require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b). Plaintiff's RFC allows him to occasionally use his lower extremities in pushing/pulling and use his upper extremities without restriction. He is also able to occasionally climb, balance, kneel, crouch, crawl and stoop. Contrary to his suggestion, the limitations he cites do not preclude, or even significantly impact, any of the tasks required for light work. The ALJ therefore did not err in applying the Grids at step five.

C. <u>Dr. Wlasichuk's Sitting Limitation</u>

Plaintiff contends that the ALJ erred in failing to explain why she rejected Dr. Wlasichuk's limitation to sitting for four hours even though she afforded his opinion "great weight." AR 15. In her RFC, the ALJ adopted a six hour sitting limitation rather than the four hour limitation suggested by Dr. Wlasichuk. ALJ Flierl adopted Dr. Wlasicuk's opinion that Plaintiff could stand and/or walk up to six hours per day and the remaining elements of the RFC are consistent with Dr. Wlasichuk's opinion.

In analyzing the evidence, the ALJ reviewed the assessment of Dr. Wlasicuk, including his opinion that Plaintiff could sit for four hours in an eight hour day. AR 15. The ALJ also reviewed the limitations set forth by examining physicians Dr. Lim and Dr. Leramo, as well as those set forth by the State Agency physician. There were thee opinions given as to Plaintiff's sitting ability- Dr. Wlasichuk believed he could sit for four hours, Dr. Cacares believed he could sit for less than two hours, and the State Agency physician opined that he could sit for six hours.

As the Court has determined above that the ALJ properly discounted Dr. Cacares' opinion, the issue becomes whether the ALJ could adopt the State Agency physician's opinion over that of Dr. Wlasichuk, and whether her failure to explain her decision was an error.

ALJ Flierl ultimately adopted the sitting limitation set forth by the State Agency physician. Although she did not specifically state why she rejected Dr. Wlasichuk's sitting limitation, she explained that she gave "much weight" to the State Agency physician's assessment because it was consistent with those of the examining sources. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I). Nor does the fact that the ALJ gave "great weight" to Dr. Wlasichuk's assessment mean that she had to adopt all of his limitations. An ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753-754.

Insofar as Plaintiff claims legal error based on the ALJ's failure to specifically explain why she adopted the State Agency physician's six hours sitting limitation rather than Dr. Wlasichuk's four hour limitation, his claim fails. As the Ninth Circuit has explained with respect to treating physicians, the ALJ need not recite the incantation "I reject the [treating physician's opinions] because ..." so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision. *Magallanes*, 881 F.2d at 755. Here, even though the ALJ did not specifically explain why she did not adopt examining physician Dr. Wlasichuk's sitting limitation, she specifically explained why she rejected Dr. Cacares' opinion and why she adopted the State Agency physician's opinion. The State Agency physician gave partial weight to Dr. Wlasichuk's sitting limitation because Plaintiff had normal motor strength and there were inconsistent findings regarding gait and straight leg raising. AR 171. The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In any event, failure of an ALJ to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1991). This is especially true where, as here, the limitation at issue is only a portion of the total report.

1    The ALJ's rejection of Dr. Wlasichuk's sitting limitation was supported by substantial
2 evidence and was free of legal error.

3 D.    Credibility Analysis

4    Finally, Plaintiff argues that the ALJ improperly assessed his credibility.

5    The ALJ is required to make specific findings assessing the credibility of plaintiff's
6 subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting
7 the complainant's testimony, "the ALJ must identify what testimony is not credible and what
8 evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.
9 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.
10 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the
11 severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
12 with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
13 discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The
14 ALJ may consider at least the following factors when weighing the claimant's credibility:
15 '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or
16 between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and
17 testimony from physicians and third parties concerning the nature, severity, and effect of the
18 symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,
19 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the
20 record, we may not engage in second-guessing." *Id.*

21    Here, ALJ Flierl first set forth discrepancies in the record that she believed cast doubt on
22 Plaintiff's credibility. AR 13. For example, in August 2002, Plaintiff alleged an inability to
23 work since January 2002, but in his applications, he alleged a disability date of August 2002. He
24 testified that after the alleged onset date, he worked about two days a week helping build his
25 house. AR 13. This was confirmed in a September 2002 progress note. AR 128. The ALJ also
26 noted the inconsistencies during Plaintiff's examinations, such as his ability to walk, stand or sit
27 without difficulty, and his ability to easily and get on and off the examining table. AR 15. There
28 were also inconsistencies in his straight leg raising, as well as in lumbar range of motion testing

due to poor effort. AR 15. Despite Plaintiff's contention, these were all valid credibility determinations. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ also found Plaintiff not entirely credible based on the lack of objective evidence to support his allegations. AR 16. Although the ALJ cannot rely solely on the lack of objective evidence in discrediting Plaintiff's allegations, it is a proper consideration. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)). The ALJ further noted that Plaintiff has been conservatively treated for his back pain (i.e., ibuprofen) and has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, physical therapy, or attendance at a pain management clinic. AR 14. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility).

Finally, the ALJ noted that the limitations in Plaintiff's daily activities seemed "somewhat selective and self-imposed." AR 16. Indeed, Plaintiff testified that he sometimes helps his wife with the dishes and vacuuming, visits with friends and goes shopping. AR 228.

In his argument, Plaintiff points to numerous reasons why he thinks he should have been found credible. For example, he states that although he was only taking ibuprofen at the time of the hearing, he has taken Vicodin and naprosyn for pain. This does not change the conservative nature of his treatment, however.

He also contends that he made persistent efforts to obtain relief and that this should bolster his credibility. Specifically, he explains that he saw Dr. Cacares for just over one year and received treatment from a specialist for nine months. While SSR96-7p recognizes that an individual's persistent efforts to obtain treatment can enhance credibility, Plaintiff's year-long treatment, even if it can be considered the type of "longitudinal record" envisioned by SSR 96-7p, does not outweigh the numerous other factors cited by the ALJ. As explained above, where the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Melecio Llamas-Sanchez.

IT IS SO ORDERED.

Dated:   **July 21, 2007**                    /s/ **Dennis L. Beck**
                                                                            UNITED STATES MAGISTRATE JUDGE